UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES BRISCO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CV-0332-CVE-PJC |
| ) | |
| JIMMIE SOOTER SHERIFF ) | |
| OF CRAIG COUNTY ) | |
| OFFICE, and CRAIG ) | |
| COUNTY, OKLAHOMA, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is the motion for summary judgment (Dkt. # 39) filed by defendant Jimmie Sooter, Sheriff of Craig County, Oklahoma ("Sooter"), as to the employment discrimination claim brought against him by plaintiff James Brisco ("Brisco"). Brisco brings his claim against his former employer for alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. Specifically, Brisco claims Sooter terminated his employment on June 30, 2003 because of (1) Brisco's disability or (2) Sooter's perception of Brisco as disabled. The alleged disability is high blood pressure. Sooter moves for summary judgment on the grounds that: (1) Brisco's claim is barred by the statute of limitations; or, in the alternative, (2) Brisco has failed to establish a prima facie case under the ADA.

**I.**

The following facts are undisputed in the summary judgment record: Brisco and Sooter were co-workers in 2000. That year, Sooter announced that he planned to run for the office of the Sheriff. When Brisco learned of the announcement, he informed Sooter that he would like to become a midnight jailer. Sooter was elected Sheriff in August 2000, and he then interviewed and hired

Brisco. Brisco began working at the Craig County Sheriff's Office as a jailer in January 2001 as an at-will employee. Over the course of his employment, Sooter reprimanded Brisco once for poor work performance on or about February 2003. Sooter fired Brisco on June 30, 2003. The parties dispute the reason for Brisco's termination.

Brisco filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within the 300-day period for filing such a charge. On June 7, 2004, the EEOC mailed Brisco a "right-to-sue" letter, authorizing him to commence a civil action against his employer. Brisco filed his original claim for relief against the Craig County Board of County Commissioners ("the Board") on April 13, 2004. The Board was granted summary judgment on the basis that it was not Brisco's employer for the purposes of the ADA. Thereafter, Brisco amended his complaint on March 3, 2005 to name Sooter as defendant.

While employed by the Sheriff, Brisco experienced a number of health complications, including high blood pressure. Brisco's health problems required him to undergo ear surgery twice, nasal surgery, neck surgery, and oral surgery while working at the Sheriff's Office. Sooter accommodated Brisco with respect to his surgeries by allowing him leave from work. This claim for relief concerns Brisco's high blood pressure only and Sooter's perception of Brisco's high blood pressure.

Brisco went on leave in mid-June 2003 because of complications from high blood pressure. Brisco's doctor notified the Sheriff's Office on June 17, 2003 that Brisco was released to work full-time starting on June 23, 2003. On June 20, 2003, however, Brisco went to the emergency room because he was experiencing health difficulties. Brisco called into the office to report that he would be unable to return to work on June 23, and needed another week of leave. Thereafter, on June 27,

2003, Brisco's high blood pressure was found to be within normal limits and Brisco's doctor notified the Sheriff's Office that Brisco could return to work with no restrictions. Brisco went to the Sheriff's Office and saw that he was scheduled to work on June 30, 2003. Sooter, however, instructed Brisco to not report to work on June 30 but to come to his office. Plaintiff's employment was terminated that date.

Although the parties dispute plaintiff's employment record and whether Sooter spoke of plaintiff's health on the day plaintiff was fired, the issue on summary judgment is whether the record shows that there is no genuine issue of material fact as to the reason for Brisco's termination.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could

3

reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

As a preliminary matter, Sooter argues that plaintiff's claim is barred by the statute of limitations. The event at issue – plaintiff's termination – occurred June 30, 2003. The statute of limitations for a claim under the ADA is 90 days from receipt of a "right-to-sue" letter from the EEOC on a timely-filed charge of discrimination. The EEOC mailed Brisco a "right-to-sue" letter on June 7, 2004. Brisco filed his original complaint on April 13, 2004, before he received his "right-to-sue" letter, and before the statute of limitations began to run. However, Brisco filed his original complaint against the Board, which successfully had the claim dismissed because it was not Brisco's employer for purposes of the ADA. Because Brisco named the incorrect party in his original complaint, he filed three amended complaints in an effort to name the correct defendant. Sooter was named for the first time in the second amended complaint[1] filed March 3, 2005, after the statute of limitations had run. The issue, then, is whether Brisco's second amended complaint relates back to the date of the original pleading. Fed. R. Civ. P. 15(c).

---

[1]  The Court addresses the filing of the second amended complaint (Dkt. # 24) because it was the first pleading naming Sooter. Although plaintiff voluntarily filed a third amended complaint (Dkt. # 30) to drop the Sheriff's Office as a party and Sooter answered the third amended complaint rather than the second, the issue under Rule 15(c) is whether the second amended complaint relates back. The claims asserted in the second and third amended complaints against Sooter are identical.

4

Rule 15(c) provides in relevant part:

**(c) Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when
> (1) relation back is permitted by the law that provides the statute of limitation applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party . . .

Fed. R. Civ. P. 15(c). Sooter admits that the claims made in the second amended complaint arose from the same occurrence described in the original complaint and does not contend he would be prejudiced by joinder in the lawsuit. Motion for Summary Judgment (Dkt. # 39), at 8. Sooter argues, however, that the second amended complaint does not relate back to the original filing because he did not know or should not have known he would be named in the suit and because this was not a case of mistaken identity. The Court disagrees.

As previously stated, plaintiff filed his original complaint on April 13, 2004, naming the Board as defendant. In granting the Board's motion for summary judgment, this Court exercised its discretion to extend the time for filing an amended complaint and service on Sooter to January 31, 2005 (Dkt. # 18). See Fed. R. Civ. P. 15(c)(3), Advisory Committee Notes to 1991 Amendment ("In allowing a name-correcting amendment within the time allowed by Rule 4(m), this rule allows not only the 120 days specified in that rule, but also any additional time resulting from any extension

ordered by the court pursuant to that rule . . ."). Sooter was unquestionably aware of the suit before January 31, 2005 by virtue of his deposition on November 4, 2004. Thus, the Court finds that Sooter knew of the suit within the period provided for filing of the complaint.

Additionally, Sooter contends that Brisco's failure to initially name him as defendant was not a "mistake concerning the identity of the proper party" within the meaning of Rule 15(c). See Garrett v. Fleming, 362 F.3d 692, 696 (10th Cir. 2004) (holding that petitioner's substitution of named defendants for the original unknown "John Doe" defendants amounted to adding a new party). In Garrett, the Tenth Circuit narrowly held that Rule 15(c) does not protect a plaintiff who sues an unknown party and waits to identify that party until after the limitations period has expired. Id. at 697. Unlike the facts in Garrett, this Court finds that Brisco's failure to initially name Sooter was due to an error by counsel and not any legal strategy. See Maycher v. Muskogee Medical Center Auxiliary, No. 97-7021, 1997 WL 698007, at *2 (10th Cir. Nov. 6, 1997) (unpublished) ("plaintiff intended from the outset to sue her employer; she just mistakenly misnamed that entity in her complaint.").[2] Brisco knew that he worked under the Sheriff and within the Sheriff's Office, but he was mistaken as to the identity of his official employer as defined by the ADA. There is no evidence before the Court that plaintiff's counsel acted in bad faith. Sooter had reason to know from his official duties and by virtue of his deposition that he was the employer of plaintiff and thus a proper party. But for a legal mistake, he would have been named as defendant originally. The Court finds that Brisco's second amended complaint against Sooter relates back to the original complaint and, thus, is not barred by the statute of limitations.

---

[2]   The Court is aware that citation of an unpublished decision is disfavored. 10th Cir. R. 36.3. However, this unpublished decision has persuasive value on a material issue not addressed in a published opinion and it assists the Court in its disposition of this issue.

6

**IV.**

To withstand summary judgment, Brisco must satisfy the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under the three-part burden-shifting framework of McDonnell Douglas, once a plaintiff establishes a prima facie case, a presumption of discrimination arises and the employer has the burden to articulate a legitimate, nondiscriminatory explanation for its actions. Id.; see Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 967-68 (10th Cir. 2002) (applying the burden shifting framework to a discrimination case under the ADA). If the employer does so, the employee must prove that the employer's explanation is merely pretext for unlawful discrimination. 411 U.S. at 804; Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).

In order to establish a prima facie case under the ADA, Brisco must present evidence that he: (1) is disabled within the meaning of the ADA; (2) is qualified, with or without reasonable accommodation; and (3) was discriminated against because of his disability. See Smith, 298 F.3d at 966 (quoting White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir. 1995)). The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999). Brisco alleges he was disabled within subsections (A) and (C). For reasons stated below, the Court finds that the record on summary judgment does not support a finding that Brisco was disabled under subsection (A), but does present sufficient evidence for a rational factfinder to conclude that Sooter regarded Brisco as disabled under subsection (C).

### A.

High blood pressure, absent evidence of actual or perceived substantial impairment, has been held to be outside the protection of the ADA. Murphy v. United Parcel Service, Inc., 527 U.S. 516, 519 (1999) (holding that petitioner with high blood pressure was to be considered in his medicated state when determining whether he was disabled within the meaning of the ADA). Brisco has not provided any evidence that his high blood pressure substantially affected one or more major life activities. In Murphy, the plaintiff's doctor testified that, with medication, plaintiff functioned normally. Based on this evidence, the Supreme Court concluded that "the Court of Appeals correctly affirmed the grant of summary judgment in respondent's favor on the claim that petitioner is substantially limited in one or more major life activities and thus disabled under the ADA." Id. at 521. Similarly, Brisco's doctor authorized him to "return to full duty with no restrictions" on June 27, 2003. Brisco states in his second amended complaint that medicine gave him "complete relief from his symptoms" and that he "was ready to come back to work." Second Amended Complaint (Dkt. # 24), at 2. Given the absence of evidence of actual disability or substantial limitation suffered by Brisco at the time of his termination, the Court finds that Brisco has not established a prima facie case of disability discrimination under section 12102(2)(A) of the ADA.

### B.

Brisco argues in the alternative that Sooter discriminated against him because he was regarded as disabled. The ADA definition of "disability" includes being regarded as having such an impairment as would substantially limit one or more major life activities. 42 U.S.C. § 12102(2)(C). Federal regulations state that an individual may satisfy the definition of "being regarded as having" a disability where:

8

> The individual may have an impairment which is not substantially limiting but is perceived by the employer or other covered entity as constituting a substantially limiting impairment; . . .

29 C.F.R. § 1630.2(l)(1) (2005).  In Sutton, the Supreme Court described the scope of ADA protection for an employee who is regarded as disabled:

> [I]t is necessary that [the employer] entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton, 527 U.S. at 489.  Brisco argues that he was fired based on Sooter's unsubstantiated fear that Brisco might suffer a heart attack on the job.  See 29 C.F.R. § 1630.2(l) ("An individual rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities would be covered under this part of the definition of disability. . .").

Further, federal regulations offer the following example of an employee being "regarded as" having a disability:

> suppose an employee has controlled high blood pressure that is not substantially limiting.  If an employer reassigns the individual to less strenuous work because of unsubstantiated fears that the individual will suffer a heart attack if he or she continues to perform strenuous work, the employer would be regarding the individual as disabled.

29 C.F.R. § 1630.2(l).  Brisco contends that, although he was released to work without restrictions by his physician, Sooter nevertheless regarded him as substantially impaired due to high blood pressure.  Brisco testified that Sooter told him "with what's been going on with your health, we're going to have to let you go."  Plaintiff's Response (Dkt. # 40), Ex. 11, Deposition of James Brisco, at 12.  Brisco has submitted evidence that his personnel file contained no complaints at the time of his termination, that he was released to work with no restrictions and therefore qualified, and that

9

he was discharged because of a perceived health problem. Thus, the Court finds that Brisco has established a prima facie case of "regarded as" disabled discrimination under section 12101(2)(C) of the ADA.

Next, under the McDonnell Douglas framework, Sooter must articulate a legitimate, nondiscriminatory reason for terminating Brisco. McDonnell Douglas, 411 U.S. at 802-03. Sooter has submitted evidence that he fired Brisco for the legitimate, nondiscriminatory purpose of safety in the jail. Sooter has denied basing Brisco's termination on any aspect of his health condition.[3] Sooter testified that he received several hundred verbal complaints about Brisco from his former co-workers and supervisor. Plaintiff's Response (Dkt. # 40), Ex. 14-17, Deposition of Jimmy Sooter, at 18. Sooter has produced written complaints from these personnel to prove Brisco failed to complete jail security checks and was otherwise delinquent on the job. Defendant's Motion (Dkt. # 39), Ex. D-F. Two of the four authors of these complaints are on Sooter's list of trial witnesses (Dkt. # 46). The Court finds that Sooter has met his burden by offering admissible evidence sufficient for the trier of fact to conclude that Brisco was fired because of his failure to complete jail safety checks and other job deficiencies.

---

[3]  In both Murphy and Sutton, plaintiffs were denied work positions based on physical fitness requirements for the job. Murphy, 527 U.S. at 524 (plaintiff's high blood pressure prevented him from qualifying as a UPS driver under Department of Transportation regulations); Sutton, 527 U.S. at 490-91 (twin sisters with severe myopia were not hired as global airline pilots based on the airlines' vision requirement; the Supreme Court held that an employer "is free to decide that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job."). The ADA contains a defense to a charge of discrimination for selection criteria that tend to deny a job to those with a disability if the criteria have "shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation . . . ." 42 U.S.C. § 12113(a). In denying that Brisco's termination was related to his health, Sooter does not suggest that any physical fitness policy was relevant to Brisco's work as a jailer.

Finally, the burden shifts to Brisco to show that Sooter's explanation for firing him is pretext for unlawful discrimination. McDonnell Douglas, 411 U.S. at 804. Brisco submitted the following evidence of pretext: (1) Brisco testified that Sooter told him he was being fired because of health concerns, Plaintiff's Response (Dkt. # 40), Ex. 11, Deposition of James Brisco, at 12; (2) Sooter's testimony that he received hundreds of complaints is belied by his one verbal reprimand of Brisco five months prior to termination, Plaintiff's Response (Dkt. # 40), Ex. 14-17, Deposition of Jimmie Sooter, at 15-18[4]; and (3) the timing of the discharge on the morning of his return from medical leave and eight months after many of the alleged "safety" complaints. The Court finds that this evidence is sufficient to raise a genuine issue of material fact as to pretext, such that a reasonable factfinder could find that Brisco's termination was the result of Sooter's perception of Brisco as disabled.

---

[4] Brisco also relies on the following as evidence of pretext: that all written complaints about Brisco were "created" at the request of Sooter approximately nine months after Brisco was terminated. Plaintiff's Response (Dkt. # 40), Ex. 20-22, Deposition of Jimmie Sooter, at 22-24. It is assumed that some of the complainants may testify at trial, and the jury will determine the credibility of the alleged complaints documented after Brisco's discharge. However, the Court finds that post-termination documentation in and of itself is not necessarily evidence of pretext; it could just as plausibly amount to witness statements gathered in anticipation of litigation.

## V.

Accordingly, the Court **denies** Sooter's motion for summary judgment (Dkt. # 39). The pretrial conference is set for **October 4, 2005 at 3:00 p.m.**; jury trial is set for **October 18, 2005 at 9:30 a.m.**

**IT IS SO ORDERED** this 16th day of September, 2005.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT